## SOUTHWESTERN SETTLEMENT & DEVELOPMENT CO. et al. v. GUNTER et al. (No. 1069.)

(Court of Civil Appeals of Texas. Beaumont. March 11, 1924.)

**1. Landlord and tenant ⬡═➤66(2) — Tenant holding over held not to acquire title by adverse possession.**

Where contract of tenancy provided that, if the tenant held over, she should be considered in possession thereunder unless she removed from the premises and gave written notice that she no longer held thereunder, the tenant, by oral notice of repudiation of tenancy to landlord's agent, could not make her possession adverse.

**2. Landlord and tenant ⬡═➤66(2)—Contract as to tenancy held legal.**

A contract between landlord and tenant that, if tenant held over, she was to be considered in possession under the contract unless she removed from the premises and gave notice in writing that she no longer held thereunder, was not prohibited by law, and not against public policy.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by Southwestern Settlement & Development Company and others against Fred Gunter and others. From judgment for defendants, plaintiffs appeal. Reversed and rendered.

Kennerly, Williams, Lee & Hill, of Houston, for appellants.

A. M. Huffman, of Beaumont, for appellees.

O'QUINN, J. Suit in trespass to try title, brought by appellants against Fred Gunter. involving 42½ acres of land out of the western portion of Houston & Texas Central section 60, in Jasper county, Tex.

Fred Gunter answered by general demurrer, general denial, and plea of not guilty. Said defendant, joined by his mother, Mrs. G. A. Gunter, and his brothers and sisters, children of Mrs. G. A. Gunter, also filed cross-action against appellants, claiming title to and possession of 160 acres of land out of the western portion of said H. & T. C. section 60, describing same by metes and bounds, and including the 42½ acres originally sued for by appellants. The cross-plaintiffs specially pleaded the ten years' statute of limitation in support of their title.

Appellants answered the cross-action of appellees, and filed their cross-action against Mrs. G. A. Gunter for the 160 acres of land in question, pleading the three, five, and ten years' statutes of limitation.

The case was tried to a jury upon the following special issues:

Question No. 1: "Did Mrs. G. A. Gunter give to the plaintiff, Houston Oil Company of Texas, or its agent, actual notice that she was claiming the land in controversy adversely to it during the year 1911?"

To which the jury answered: "Yes."

Question No. 2: "Did Mrs. G. A. Gunter claim the land described in her cross-action and occupy, use, and enjoy the same peaceably and adversely for ten consecutive years subsequent to the time she notified the Houston Oil Company or its agent that she was claiming said land adversely to it and prior to the filing of defendants' cross-action on May 10, 1923?"

To which the jury answered: "Yes."

Appellants duly excepted and objected to the court's charge, the substance of which objections and exceptions we do not deem necessary to set out.

Appellants are the record owners of H. & T. C. section 60, including the land in controversy.

Joshua Gunter, husband of Mrs. G. A. Gunter and father of the others defendants, in 1895 built a dwelling house and outhouses on the western part of said section 60, and moved his family to same, and continued to live there until he died in 1899. Before building the house on said section 60 he lived on the Atwell tract, adjoining section 60, and had made some improvements on section 60. After the death of her husband, Mrs. G. A. Gunter continued to live on section 60 and raised her family there.

Said H. & T. C. section 60 was public land up to and until December 11, 1899, when same was patented to D. Call, appellants, by mesne conveyances, holding this title.

[1] On March 18, 1903, Mrs. G. A. Gunter acknowledged tenancy to the Houston Oil Company, the then owner of said section 60, covering the western portion of section 60 upon which her improvements were located, for a period of some five years, or until January, 1908, and under this tenancy, during said period, remained in possession of and used the said improvements. At the expiration of this term, and on February 22, 1908, Mrs. Gunter executed the following acknowledgment of tenancy to said Houston Oil Company, to wit:

"The State of Texas, County of Jasper.

"Know all men by these presents, that on this the 22d day of February, 1908, I, G. A. Gunter, and son J. H. Gunter of the county of Jasper, state aforesaid, in consideration that the 'Houston Oil Company of Texas, a corporation duly incorporated and existing under and by virtue of the laws of the state of Texas, with its principal office in the city of Houston, Harris county, Texas, now owning in fee simple the following described tract or parcel of land, to wit: 640, six hundred and forty acres, H. & T. C. Ry. Co. section No. 60, located about 16 miles south of Jasper in Jasper county, Texas—said section is bounded on the north by H. & T. C. sections Nos. 127

and 128, on the east by the E. Jones 160-acre survey, on the south by H. & T. C. Sec. 38 and 59, and the William Atwell 160-acre survey, and on the west by H. & T. C. Ry. No. 37. The title to which property we acknowledge to be in the Houston Oil Company of Texas, and said Houston Oil Company of Texas is desirous of placing a tenant upon said land for the purpose of protecting the same and having it guarded against trespassers and preventing any and all persons trespassing upon same or from cutting and removing the timber now situated or standing and growing thereupon, and for and in consideration that we are to use and enjoy until the first day of January, A. D. 1911, the improvements situated thereon for farming purposes only, G. A. Gunter and son J. S. Gunter, as aforesaid, do hereby acknowledge our tenancy under the above-named company and obligate and bind ourselves to use the said land for farming purposes only, until the said first day of January 1911, and that we will not cut nor destroy any timber thereupon nor suffer nor allow any other person to do so, and as agents and tenants as aforesaid will prevent any and all trespasses from others, of whatsoever nature, upon said land and timber, and that we will at once make a report in writing to the Houston Oil Company of Texas at Houston, Texas, of all depredations and trespasses upon the above-described land or the timber thereon, or upon any other lands and timber in the vicinity thereof owned by the said Houston Oil Company of Texas, and at the expiration of the above-specified time, to wit, January 1, 1911, or upon the termination of the lease in any manner we will vacate, deliver up and turn over the above-described premises unto the said company, their successors or assigns, in as good and perfect condition as they now are, free from all charges, costs, expenses or delay to it, the said company, whatsoever.

"We further bind ourselves to watch and protect depredations, by any and all persons, the lands and timber owned or claimed by the Houston Oil Company of Texas in the vicinity of the above-mentioned property, and to at once report to said Houston Oil Company of Texas at Houston, Texas, any trespassing or depredation thereon.

"We further agree, in consideration of the use and enjoyment of said premises as above stated, to assist the Houston Oil Company of Texas, its agents and employees, in obtaining information relative to the location, lines and condition of its lands and all facts regarding any adverse claim thereto, and to furnish to said company or its agents or employees all information and all papers and documents in our possesion relative thereto at any and all times.

"Nothing herein contained shall prevent the Houston Oil Company of Texas, its agents, employees, or assigns, or any person, firm or corporation claiming by, under or through said Houston Oil Company of Texas, from going or remaining upon said above-described premises or any part of same for any purpose whatsoever at any time, nor from making any improvements of said premises, nor cutting the timber therefrom, nor sinking well for any purpose therein, at any time whatsoever.

"We further agree that if after the expiration of this contract we remain in possession of said land or any part of same, said Houston Oil Company of Texas may at its option treat this contract as in full force, and if at any time after the termination of this contract we are in possession of said premises or any part of same, we shall at the option of the said Houston Oil Company of Texas be held and considered to be in possession under this contract unless we shall actually remove from said premises, and at the time of removal give the Houston Oil Company of Texas notice in writing by United States registered mail at Houston, Texas, of such removal from said premises and that we no longer elect to hold hereunder.

"We further agree that any right, title or claim in and to said premises that we may have already acquired by occupancy or otherwise, or that we may acquire, or attempt to acquire in and to said premises during the time this contract is in force, or at any time thereafter that we may be in possession of said premises or any part of same, shall, at the election of said Houston Oil Company of Texas, inure to the benefit of said Houston Oil Company of Texas; and we do grant, bargain, sell and convey the same unto said Houston Oil Company of Texas and do subrogate said Houston Oil Company of Texas to all our rights thereunder.

"We further agree that this contract is not assignable, and that we cannot sublet said premises nor any part of same without the consent in writing of said Houston Oil Company of Texas.

"We further agree that failure on our part or failure of either of us to report any trespassing or depredations upon any of the lands or timber of said Houston Oil Company of Texas that may come to our knowledge, or any violation by us or either of us of any of the terms hereof, shall at the election of the said Houston Oil Company of Texas or its assigns, terminate this contract.

"Nothing herein contained shall be held to be a waiver by the Houston Oil Company of Texas of any of the rights given landlords by the laws of Texas.

"In testimony whereof, we hereunto set our hands this 22d day of Feb., A. D. 1908.
                    "G. A. Gunter.
                    "J. S. Gunter,"

—which was duly acknowledged and recorded in the deed records of Jasper county, Texas.

Mrs. Gunter has continuously resided upon that portion of section 60 covered by her acknowledgment of tenancy. She has never removed therefrom, nor in any manner released or surrendered her possession of same.

We shall discuss only one of the propositions presented by appellants.

[2] Appellants contend that Mrs. Gunter, having contracted on February 22, 1908, that:

"If after the expiration of this contract we remain in possession of said land or any part of same, said Houston Oil Company of Texas may at its option treat this contract as in full force, and if at any time after the termination of this contract we are in possession of said premises or any part of same, we shall at the option of the said Houston Oil Company of Texas be held and considered to be in pos-

session under this contract unless we shall actually remove from said premises, and at the time of removal give the Houston Oil Company of Texas notice in writing by United States registered mail at Houston, Texas, of such removal from said premises and that we no longer elect to hold hereunder."

—could not acquire adverse possession to the premises in the absence of actually removing from the premises and notifying the Houston Oil Company of her removal from said premises, and that she no longer elected to hold under said lease. We think the contention is sound. Mrs. Gunter, for a valuable consideration, the use and occupancy of the premises, contracted to become, and acknowledged herself to be, the tenant of the Houston Oil Company up to and until January 1, 1911, and further contracted that, if, after said date, she remained in possession of the land or any part of same, the Houston Oil Company, at its option, might treat the tenancy contract as continuing in full force, and that, if at any time after the termination of the contract she was in possession of the premises or any part of same, she should, at the option of the Houston Oil Company, be held and considered to be in possession of same under her said contract of tenancy, unless she actually removed from the premises, and at the time of her removal gave the Houston Oil Company notice of her removal, and that she no longer elected to hold under her contract of tenancy. She accepted said contract, occupied and used the premises thereunder, and at the termination of same, January 1, 1911, she did not remove from said premises and give her landlord notice of her removal and of her intention to no longer hold thereunder, but, to the contrary, she remained in the possession and use of said premises, and is now contending that, by reason of having told an agent of her landlord that she was claiming the land for herself and adversely to her landlord, she is entitled to the benefit of the statute of limitations, her contract to and with her landlord to the contrary notwithstanding. We do not think she can do so. The contract provides that it shall remain in full force, so far as the Gunters are concerned, as long as the Gunters are in possession of the premises, and cannot be terminated by them except upon removal from the premises. Mrs. Gunter has continuously remained in possession, and cannot now claim her possession to be adverse except in violation of her contract. She could not convert her possession into an adverse holding while remaining in possession. Her contract was lawful; it was such as the parties had the right to make, in no wise prohibited by law, and not against public policy. She executed it voluntarily, and for a valuable consideration. There is no claim that its execution by her was obtained by fraud or any other unlawful or inequitable means. It is clear and easily understood. She makes no contention that she did not understand its terms at the time she executed same. Having accepted the benefits of the contract for and during its whole life, she should not now be permitted to repudiate it over the protest of the other contracting party, and in direct disregard of her voluntary and solemn contract. As Judge Coke, in Menard v. Sydnor, 29 Tex. 262, says:

"As men bind themselves, so must they stand bound. When the terms of a contract are free from ambiguity, and not such as are against the policy of the law to enforce, they establish the rights of the parties in the subject-matter, which will be protected and enforced by the courts. The terms of the instrument sued on in this case are clear, the intention obvious. It is such a contract as the parties had a right to make, and as should be enforced equally on all, according to its intent and meaning."

This contract was never terminated by Mrs. Gunter. She never removed from the premises, but, on the contrary, she remained in possession in such manner, we think, as to keep the lease contact in force until the filing of this suit. Under her contract it was necessary for her to remove from the premises, and to notify her landlord that she would no longer hold under the contract, and then re-enter and take possession in hostility to the owner, before she could begin adverse possession such as would support limitation.

Believing it unnecessary to discuss any other of the propositions presented, and that the court below erred in rendering judgment for appellees, and that judgment should have been for appellant, we will here render the judgment that should have been rendered below, that appellees take nothing by this suit, and that appellant recover of appellees title and possession of the land in question and all costs expended in this behalf.

Reversed and rendered.